# Winters's Appeal.

1. A bill by Winters alleged that Wilcox held a judgment against Thompson, and plaintiff as surety, that Wilcox and Thompson agreed that Thompson's property should be sold at sheriff's sale, bought in by Wilcox at a low price, and the judgment satisfied; that the land had been sold to Wilcox, who did not satisfy the judgment, but afterwards assigned the judgment to Chase, who issued execution, and the plaintiff paid the amount. The bill showed that the plaintiff was not a party to the agreement, and none of the consideration moved from him. *Held,* that there was no privity of contract between the parties, and no suit at law or equity could be maintained by plaintiff against Wilcox.

2. The bill alleged that the plaintiff had been informed by Wilcox and Thompson of the arrangement, and in consequence did not attend the sheriff's sale and bid, so as to cover the judgment, as he would have done if there had been no agreement, but did not allege fraudulent combination, misrepresentation or deceit, to prevent him from attending the sale and to compel him to pay the judgment. *Held,* that if he was injured by not attending and bidding, it was *damnum absque injuria,* and no action would lie.

3. If there had been such fraud, his remedy would be at law, not in equity.

4. The only ground on which the plaintiff could recover back the money paid to Chase, was that the principal debtor's land had paid the judgment, and that he had paid the money to Chase without a knowledge of the facts.

5. Having paid the money with a knowledge of the facts, it was to be treated as voluntary. He might have applied to the court before payment and had the judgment opened.

March 11th 1869.　　Before THOMPSON, C. J., READ, AGNEW and WILLIAMS, JJ. SHARSWOOD, J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Luzerne county:* In Equity: No. 274, to January Term 1869.

Merrit Winters filed his bill to August Term 1865, against George S. Wilcox and Crandall W. Thompson. The bill set out that on the 7th of April 1861, he and Isaac Thompson executed and delivered to George S. Wilcox a judgment-note for $660, he being merely surety for Thompson; that judgment No. 204 to April Term 1861, was entered on the note, and at that time Isaac Thompson was the owner of certain real estate (described in the bill), on which this judgment was a lien; that Crandall W. Thompson claimed an interest in some part of this real estate; that Wilcox held a judgment against Crandall, No. 47, to February Term 1861, which was a lien on Crandall's interest, and one against Isaac alone, No. 84, to August Term 1860; that on or about September 2d 1863, an agreement was entered into between George S. Wilcox, Isaac and Crandall Thompson, that Wilcox should purchase for $5500 the real estate of Isaac, including the interest of Crandall, the purchase-money to be applied to the payment of certain judgments, amongst which was the judgment of Wilcox against Isaac and the plaintiff; that the plaintiff was informed by Wilcox and Isaac Thompson of this arrangement which had been

made at the instance of Wilcox and Crandall, but that in order to make a good title the sale was to be made by the sheriff, and the land to be bought by Wilcox or his attorney at as low a price as possible, to save costs; that after the acknowledgment of the sheriff's deed to Wilcox he was to satisfy his judgment against the plaintiff and Isaac Thompson, and other judgments against Isaac and Crandall; that all these arrangements were communicated to the plaintiff by Wilcox and Isaac Thompson; that pursuant to the arrangement a venditioni exponas was issued on the judgment against Isaac, No. 84, to August 1860, and the land sold to Edward H. Chase as attorney for Wilcox, and he took the sheriff's deed for the same in trust for Wilcox; that Isaac had no other property; that in consequence of the representations made to the plaintiff by the other parties of their foregoing arrangements, he did not attend the sheriff's sale nor bid on the same, nor had he any person to attend the sale, as he would have done had it not been for the information he had received of the foregoing arrangements; that he would have bid enough to cover the judgment for which he was liable, and that the value of Isaac Thompson's estate was beyond the amount of the judgment for which the plaintiff was liable, and all prior liens; that Wilcox and Crandall Thompson refused to satisfy the judgment, and assigned it to Edward H. Chase, who issued execution on it, and compelled the plaintiff to pay him its amount on the 6th of April 1864. The prayer was that the defendants be required to pay the plaintiff the money paid by him to Chase, &c.

The defendants, in their answer, denied that there was any such agreement and arrangement as was alleged in the bill, for the purchase of Isaac Thompson's land and satisfying the judgment against him and the plaintiff. They also denied many of the other allegations of the bill. It is not necessary to the understanding of the case to state the matters in the answer more particularly.

The case was referred to E. P. Darling, Esq., as examiner and master.

Peter Winters, a witness for plaintiff, testified: "A short time before the sheriff's sale, I met Wilcox on the road, and got talking about those debts against Isaac Thompson, and amongst others my own. He told me it wasn't worth while to bother about it, as they had made arrangements. This debt of mine and the Williams or Abbott judgment were to be paid out of the sale, and I think Merrit's. They had agreed on the price of the different lots, so George told me, and after these judgments were paid the balance was to go on a judgment of his (Wilcox) against both the Thompsons. He stated what properties he had agreed to take. He said there were some included in the levy which he had not made arrangements for. He told me what prices he was to pay. I don't know that I recollect them now. I think the Port Griffith

lots were to be a thousand dollars. The Daman lot I think was in the neighborhood of three thousand dollars. Wilcox said he had made these arrangements with the Thompsons. I told him if the arrangements had been made in this way I would not attend the sale. He said there would be no need of it. I did not attend. He mentioned as though he would like to have the properties go as low at the sale as they could, but that the price was fixed at which he was to take them. I also had a conversation with Isaac Thompson before the sale. He told me about the same story. He told me that he and Crandall and Wilcox had made the arrangements to bid off his property at the sale as low as they could, and apply the balance to Wilcox's debt. I don't know as he mentioned the debts that were to be paid. My debt was paid me out of the proceeds of sale. This judgment 204, April Term 1861, is now assigned to me. Merrit furnished me the money to pay for it, and I hold it only as trustee for him. In my talk with Mr. Wilcox, he said that the reason they had a sheriff's sale was that a private sale would not be good because of so many judgments. He said that he got it in order to save himself by buying it in cheap."

On cross-examination, he said that the conversation did not impress him with the idea that Wilcox wished to keep him from the sale.

Isaac Thompson, for plaintiff, testified: "George S. Wilcox came to my house some time in the latter part of the year 1863, I think. He said that Crandall requested him to come up and see me. He said he and Crandall had come upon some conclusion of making a settlement, or had made one, I can't say which. He said Crandall had offered him several pieces of property, and said that he had chosen three of them. I think the Daman house was one, but the price fixed I cannot now say. Then there were some houses and lots that I had at Port Griffith; I think four houses and lots, and one lot without a house on it. These lots I recollect well, Mr. Wilcox said he was to take for a thousand dollars. The other was a dwelling-house of Crandall's, in Jenkins township. I asked him if the judgment they had against me, and the one they had against me and Winters, was to be taken into this bargain. He said they were. I said I had no objections at all. They had but one judgment against me, and one against Winters and me. George Wilcox had also bought from the Abbotts, a judgment against me and Crandall. I had become so involved that I could not make a deed free of encumbrance, and so the title to the Port Griffith property had to be made by a sheriff's sale. George did not say when the judgments were to be satisfied. I think he said he was to meet Crandall at Wilkesbarre, and make further arrangements after he had seen me and got my consent."

Maria Thompson, wife of Isaac Thompson, for the plaintiff, tes-tified: " I was present at a conversation between Isaac Thompson and George Wilcox. He asked my husband if he was willing to let his property go to pay the debts, and he said he was. I think, as I understood it, that both my husband's note and that of his and Merrit was to come in. One part of the property was to be sold by the sheriff."

Elizabeth Bean, a witness for plaintiff, testified: " I am a daughter of Isaac Thompson. I was present at a conversation between George Wilcox and my father in the fall of 1863, at my father's house. George asked if he was willing to let these pro-perties go, and father said he was if the judgments of Wilcox and Winters were brought in and settled off by the sale; and George said they would be."

There was some evidence also that a judgment in favor of Isaac Thompson was assigned without consideration to Crandall, and that Crandall acted as agent of Isaac in reference to his real estate.

E. H. Chase, Esq., for defendant, testified: " After the issuing of the writs, in August 1863, and before the sale, a proposition was received from C. W. Thompson to arrange all the judgments of Wilcox against both Isaac and himself, by the transfer of real estate to Wilcox. The judgments against C. W. to be satisfied of record, and those against Isaac to be assigned to C. W. This proposal was never reduced to an agreement, but was in negotiation some time, and was finally abandoned by C. W. Thompson, on 10th November 1863. On the same day, C. W. Thompson made to me a proposition of arrangement in substance as above, which was refused by Mr. Wilcox on submission to him. Afterwards, Mr. Wilcox permitted me to make a proposition to C. W. Thompson, as follows: Thompson to convey lots 1 and 6, at the value of $3000 and $1500 respectively, and the balance of the Wilcox judgments, amounting at that time to about $6200, to be paid in money; Wilcox to satisfy the C. W. judgments and assign those against Isaac. I submitted this to Mr. Thompson, and he finally assented to it with this condition: That the levy on the judgment No. 84, August Term 1860, against Isaac should be first sold, and the proceeds of that sale applied to reduce the liens, and the amount of money difference between value of lands conveyed, and amount of Wilcox's judgments as far as it would reach. This was assented to by Mr. Wilcox, and I forthwith proceeded to carry out the arrangement. At the sale I first offered the lots 7, 8 and 9 in plaintiff's schedule ' A,' and ran them up as far as Mr. Wilcox would authorize me. My recollection is, all three lots had been offered and bid upon before any was stricken down. I did and said everything to induce bidding upon them. When I was satisfied no more would be bid, I asked Wilcox if I should

let them go.   Mr. Thompson then called me aside and urged me to buy them myself.   I finally agreed to bid them off, advance what money the sale required, and hold the title for him, to be transferred when my advances were repaid.   The properties were then struck down to me at a higher sum than had been by any one else bid.   At Mr. Thompson's instance, I bid the lots all in finally in order to clear the judgment of levy, and also upon a suggestion that the bids would not be complied with if struck down to the opposing bidder.   The money was all paid by me; Wilcox had no interest in the purchase whatever.   On 5th January 1864, Mr. Thompson delivered his deeds for lots 1 and 6 in plaintiff's schedule, and Wilcox assigned him judgment No. 204, April Term 1861, and satisfied judgment No. 47, February Term 1861.   Shortly afterwards, Thompson assigned me judgment No. 204, April Term 1861, to collect and apply on my bid for him. I issued execution at last failing to collect otherwise, and on 30th March 1864, Merrit Winters personally made me a payment; he was full of regrets he had not attended the sheriff's sale, and bid up the property of Isaac sufficient to have covered the judgment No. 204, April Term 1861, if necessary; that at any rate he could have saved himself by buying; but he had no idea the sale would take place.   Crandall had stayed the other sale, and he supposed he would this, and it would be lost time for him to come down."

The master reported, amongst other findings :—

" 3. That no agreements have been proved valid at law and enforceable by the present plaintiff, under which it became the duty of the defendants, or either of them, to satisfy the judgment No. 204, April Term 1861.

" 4. That the real estate specified in schedule 'A' of the bill, was sold by virtue of *alias vend. ex.*, issued sur-judgment No. 84, August Term 1860, on the 2d day of January 1864, to E. H. Chase, for $870, and was conveyed to him by the sheriff, by deed dated October 25th 1864.   That the Port Griffith lots were alone the actual objects of that sale, and were bought by him at Crandall Thompson's request, and for his use, and not as trustee for Mr. Wilcox.

" 5. That Mr. Wilcox did assign the judgment No. 204, April Term 1861, to C. W. Thompson, in consideration of the lands conveyed and cash paid him by said Thompson.   That Thompson assigned the same to Mr. Chase, to secure the money advanced for him by Mr. Chase upon the bid aforesaid.

" 6. That Merrit Winters has paid the said judgment to Mr. Chase, as set forth in said bill and schedule ' B.'

" 7. That the said real estate, owned by Isaac Thompson, at Port Griffith, was worth at the time of sale between eight hundred

and one thousand dollars, and that the liens thereupon at that date and prior to the judgment No. 204, April Term 1861, amounted to $1731.41.

" 9. Merrit Winters did not attend the sheriff's sale. There is no testimony showing that he was informed that it was not necessary for him to attend to protect his interests.

" 10. There is no evidence that it was stated at the sheriff's sale that such sale was made under an arrangement by the parties, and parties requested not to bid."

The plaintiff filed exceptions to the report.

After argument, the court (Conyngham, P. J.) overruled the exceptions and dismissed the bill.  The plaintiff appealed to the Supreme Court, and assigned this decree for error.

*D. C. Harrington,* for appellant.—Crandall being agent of Isaac, could not purchase the land against his principal's interest: Brightly's Eq. § 412, 414, 421, 422, and notes; Myers's Appeal, 2 Barr 466; Rankin *v.* Porter, 7 Watts 387; Sheriff *v.* Neal, 6 Id. 540; Miller *v.* Pearce, 6 W. & S. 100; Lloyd *v.* Carter, 5 Harris 220.  A trust may be proved by parol: Lloyd *v.* Carter, 5 Harris 220.  As to what will create a trust, he cited Harrold *v.* Lane, 3 P. F. Smith 268; Stimpfler *v.* Roberts, 6 Harris 283; Church *v.* Sterling, 6 Conn. 388; Tiffany and Bullard on Trusts 22–33, 202.

*E. S. Osborne,* for appellee, who furnished no paper-book.

The opinion of the court was delivered, May 11th 1869, by

WILLIAMS, J.—This was a bill to compel the defendants to repay to the plaintiff the amount of a judgment which he had paid as the surety of Isaac Thompson, his co-defendant.  The plaintiff alleges, as the ground of the relief which he asks, that the defendants had agreed to satisfy the judgment in consideration of the conveyance, or transfer by means of a sheriff's sale, to George S. Wilcox, one of the defendants, and the plaintiff in the judgment, of certain real estate belonging to Isaac Thompson, the principal debtor, which was bound by the lien of the judgment: that the real estate of Thompson had been sold at sheriff's sale pursuant to the agreement, for a nominal consideration, and purchased by the attorney of Wilcox, who took the sheriff's deed and held the title in trust for him; and that the defendants, instead of satisfying the judgment in accordance with their agreement, had assigned it to Edward H. Chase, and the plaintiff had been compelled to pay the assignee the amount thereof.  It appears on the face of the bill that the plaintiff was not a party to the alleged agreement, and that no part of the consideration moved from him.  There was, therefore, no privity of contract between the parties, and no suit

or action could be maintained thereon by the plaintiff against the defendants either at law or in equity. But the bill alleges that the plaintiff was informed, by George S. Wilcox and Isaac Thompson, that such an agreement had been entered into by and between the parties, at the instance of the defendants, and that in consequence thereof he did not attend the sheriff's sale of said real estate, nor bid on the same, as he would have done, had not the agreement of the parties been communicated to him; and he avers that he was willing to bid on the said real estate sufficient to cover the judgment upon which he was liable as the surety of Isaac Thompson. But he does not allege any fraudulent combination, misrepresentation or deceit on their part to prevent him from attending the sheriff's sale and bidding on the said real estate an amount sufficient to cover the judgment, in order that they might obtain the property for a nominal consideration, and, in fraud of their agreement, compel him to pay the judgment for which he was liable as surety. If, therefore, the plaintiff was prevented from attending the sale and bidding on the property, as alleged, and suffered loss thereby, it was *damnum absque injuria*, and no action will lie therefor. But if the bill had alleged that the plaintiff was prevented from attending the sheriff's sale, and bidding up the property to an amount sufficient to cover the judgment, by the fraudulent misrepresentation and deceit of the defendants, the plaintiff, though he might have maintained an action on the case therefor, would have no remedy in equity. The only possible ground on which he is entitled to recover back the money paid on the judgment, is that it was in fact paid and satisfied out of the real estate of the principal debtor before its assignment. If it was wrongfully assigned by the defendants after it was so paid and satisfied, and if the plaintiff paid the assignee the amount without a knowledge of the fact of its previous payment, he might recover it back from the defendants in an action at law, but not by a proceeding in equity.

But it is doubtful whether an action at law would lie for the recovery of the money, under the circumstances of this case, inasmuch as the evidence shows that the plaintiff paid it with a full knowledge of all the facts, and the payment must therefore be regarded as voluntary on his part. He did not apply to the court to open the judgment and let him into a defence, as he might, but paid it and had it assigned to his father in trust for his use. It is clear then that this bill cannot be maintained in any aspect of the case. But if the bill would lie, the plaintiff, under the pleadings and evidence, is not entitled to the decree for which he asks. The answer positively denies the alleged agreement, and the master finds that no agreement was proved under which it became the duty of the defendants, or either of them, to satisfy the judgment, and his finding was approved by the court below. We have care-

[Winters's Appeal.]

fully considered the evidence reported by the examiner, and are clearly of the opinion that it does not establish the alleged agreement. The negotiations testified to by the plaintiff's witnesses were never consummated. The testimony of Isaac Thompson, one of his main witnesses, shows that the agreement of which he and the other witnesses speak had not been finally concluded. He says: " George" (meaning George S. Wilcox, one of the defendants), " did not say when the judgments were to be satisfied. I think he said he was to meet Crandall at Wilkesbarre and make further arrangements after he had seen me and got my consent." And the testimony of Chase shows that the propositions then pending and the arrangements contemplated were never consummated, and that an entirely different arrangement was made between the parties, by which, among other things, it was agreed that the judgment in question should be transferred by Wilcox to Crandall W. Thompson on his paying the amount thereof: and that he did not purchase the property of Isaac Thompson at the sheriff's sale for the use of Wilcox, but in trust and for the use of Crandall W. Thompson. If this be so, the plaintiff's claim is wholly without foundation. If, then, there was no such agreement, as alleged by the plaintiff, and if the judgment was not satisfied by the sale of Isaac Thompson's property, the plaintiff has no right to recover back the money paid on the judgment, and his appeal must be dismissed.

Appeal dismissed at the costs of the appellant.